UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WARRANT EXECUTED AT 2026 GLEASON AVE., THE BRONX, NEW YORK ON AUGUST 3, 2020,<br><br>JONATHAN LINVAL<br><br>         Petitioner,<br><br>  -against-<br><br><br>RUBY J. KRAJICK,<br><br>         Respondent. | **PETITION TO UNSEAL AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No.: 22-mc-00278 |

  Petitioner Jonathan Linval, by his attorneys at Rickner PLLC, hereby makes this Petition to unseal the federal search warrant and underlying search warrant application relating to the search of his home, as follows:

### PRELIMINARY STATEMENT

  Petitioner Jonathan Linval ("Petitioner" or "Linval") comes before the Court seeking the release of the any search or arrest warrant(s), accompanying application(s), and any additional underlying documentation presented to the court in support thereof, that were used as a basis to enter Petitioner's home at 2026 Gleason Ave., Apt 2H, Bronx, New York, August 3, 2020, during which federal officials sought to arrest an individual by the name of Justin Lopez, who did not live at the aforementioned residence where the warrant(s) were executed.

  Thus, Petitioner believes that his constitutional rights were violated because authorities did not possess the requisite probable cause to enter or search his home home based on the facts provided to the magistrate. Moreover, the officers were searching for an individual who did not,

1

and has never, resided at the targeted address. Counsel therefore seeks the warrant application to fulfill her duties under the Federal Rules of Civil Procedure to complete a diligent investigation of Mr. Linval's potential civil rights claims prior to the commencement of a lawsuit.

Petitioner's counsel attempted to gain access to the warrant through alternative means to no avail. A request to the Court Clerk's office was attempted and no information or documents were provided. No prior application for the relief sought herein has been made to this Court.

## FACTUAL BACKGROUND

On August 3, 2020, at approximately 9:00 a.m., U.S. Marshals (or other federal law enforcement) entered the home of Petitioner and announced that they were looking for a man named Justin Lopez, who did not reside at the residence they entered. The federal officials entered the home wearing body armor, with military-style guns and tasers, which were pointed at Linval and his family. The Marshals proceeded to search the apartment, destroying and damaged the personal effects therein. The Marshals provided no search warrant justifying this entry to Petitioner or his family; instead, they left a copy of a Department of Justice/Marshal's Service wanted flyer for Justin Lopez, which had Linval's home address hand-written onto the back. *See* **Ex. A**.

Linval therefore seeks an order unsealing any warrant and application executed at his residence on August 3, 2020, including any arrest warrant for Justin Lopez or search warrant for Petitioner's apartment address, and all underlying applications and supporting documents used to obtain any such warrants.

## ARGUMENT

The public has a long enjoyed a common law right of access to judicial documents. "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589,

597 (1978). This right is a core component of a society whose "citizen's desire to keep a watchful eye on the workings of public agencies." *Id*. at 598. The Second Circuit Court of Appeals has clearly articulated this right as a presumption of access to judicial documents:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice . . . Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo* ("Amodeo II"), 71 F.3d 1044, 1048 (2d Cir. 1995)). "Judicial documents" are broadly defined as those materials submitted to courts that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch* at 119. A "[f]inding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir.2013)).

A search warrant application is a "public document subject to a common law right of access." *Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990). This Court has noted that such documents "plainly" qualify as "judicial documents" because "courts must necessarily review them in order to perform" their task of deciding such applications. *In re Application of the N.Y. Times Co.*, 600 F.Supp.2d 504, 507 (S.D.N.Y. 2009). This presumption is "at a its zenith 'when, as here, the documents are directly relevant to the exercise of a court's Article III judicial power.'" *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 404 (2d Cir. 2009) (quoting *In re Application of the N.Y. Times Co.*, 600 F.Supp.2d at 507).

Recognizing the public right to access search warrant applications, this common law right

must be balanced against important countervailing interests. The court "has a responsibility to exercise an informed discretion . . . with a sensitive appreciation of the circumstances" surrounding the warrant application. *Nixon*, 435 U.S. at 603. For example, it is regularly the case that the government seeks to keep search warrant records under seal to protect ongoing investigations. But no such active investigation is present here. The warrant application, if any exists, was made over two years ago, and, upon information and belief, no criminal proceedings against Petitioner or any member of his household or family were pursued in connection with the entry and search.

Petitioner's allegations that the either (1) there was no warrant to enter his home; or (2) that any such warrant was improperly issued and unreasonably executed, can only be assessed—and eventually proven—with the information contained in the sworn affidavit or testimony supporting the warrant's issuance. *See Kitevski v. City of New York*, No. 04 cv 7402, at *3 (S.D.N.Y. Mar. 16, 2006) ("When the records are both relevant and essential to the presentation of the case on the merits, the need for disclosure outweighs the need for secrecy."); *Ayala v. City of New York*, 04 cv 1102, at *1 (S.D.N.Y. Dec. 16, 2004) ("[T]he law requires a court to balance the public's interest in protecting the flow of information to law enforcement personnel against the public's interest in a fair determination of the merits of a case."). But Plaintiff "cannot even attempt to make the required preliminary showing [of the warrant's existence or invalidity] without learning . . . what information the affiant relied on in requesting the search warrant." *Ayala*, 04 cv 1102 at *2 (internal citations omitted). If the warrant was procured under false pretenses or was meant to target an individual who did not reside Petitioner's home—or worse, no warrant was issued at all—the Fourth Amendment's promise that "presumptively innocent people" can be "secure in their homes from unjustified, forcible intrusions by the Government" was blatantly violated. *Steagald v. United States*, 451 U.S. 204, 222 (1981). Thus, the information sought by this

4

application is not only of a deep personal interest to Petitioner, but is integral to the public's trust in the system by which law enforcement is granted permission to enter one's home, particularly where, as here, the intended target was not present or living at the target address. *Id*. at 219 ("[A]lthough the subject of an arrest warrant could not find sanctuary in the home of the third party, the home remain[s] a 'castle or privilege' for its residents.").

Finally, if unsealing of any relevant warrant application and supporting affidavit(s) implicates the privacy interests of any third-party outside those persons who reside at the targeted address, or the law enforcement officers who obtained the warrant, those concerns can be mitigated through simple redaction. *See In re N.Y. Times Co. to Unseal*, 577 F.3d at 405; *In re Search of Premises Known as 1182 Nassau Averill Park Rd.*, 203 F. Supp. 2d 139 (N.D.N.Y. 2002) (ordering the disclosure of a warrant application to a civil rights litigant with redactions to protect certain confidential informants). However, the non-disclosure of third-party persons, including confidential informants, is neither required nor absolute, and Petitioner respectfully requests that any proposed redactions be reviewed *in camera* to determine their validity.

## CONCLUSION

WHEREFORE, Petitioner respectfully asks this Court to enter an order to unseal any search or arrest warrant, with supporting documents, that were used to enter Petitioner's home as described above, and make those documents available for public inspection, or, in the alternative, and order granting Petitioner access to these documents under seal to assess any potential civil rights violations committed against Petitioner.

Dated: New York, New York
January 31, 2023

Rickner PLLC

By: *[signature]*

Stephanie Panousieris
Rob Rickner

14 Wall Street Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorneys for Petitioner*